UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONALD HOLTZ,

               Plaintiff,

    v.

NURSE TERRY et al.

               Defendants.

CASE NO. C12-5110 RBL-JRC

REPORT AND RECOMMENDATION

NOTED FOR:

MARCH 15, 2013

      The District Court has referred this 42 U.S.C. §1983 civil rights action to the undersigned Magistrate Judge. The Court's authority for the referral is found in 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Magistrate Judges Rules MJR 1, MJR 3, and MJR 4. Plaintiff also brings the action pursuant to 29 U.S.C. §§ 701-97b, the Rehabilitation Act (hereinafter "RA") and pursuant to 42 U.S.C. §§ 12101-12213, the Americans with a Disabilities Act, (hereinafter "ADA").

      The parties have filed cross motions for summary judgment (ECF No. 28 and 32). The Court recommends granting defendants' motion for summary judgment and denying plaintiff's motion. Plaintiff fails to show that the denial of his medications on two occasions is a violation of any right or duty owed him under the United States Constitution or other federal law.

## PROCEDURAL HISTORY

Defendants' motion was originally filed as a motion to dismiss. The motion had to be re-noted several times because of amendments to the complaint or because plaintiff insisted on filing the action as a declaratory judgment action.  (ECF No. 9, 14, 21, and 28). Plaintiff attached documents outside the pleadings in responding to defendants' motion to dismiss (ECF No. 32). The Court then converted defendants' motion to dismiss to a motion for summary judgment and gave all parties additional time to file briefing (ECF No. 35). Plaintiff then sought and received additional time because of his transfer from one prison facility to another (ECF No. 47).

## STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine issue of fact for trial if the record, taken as a whole, could lead a rational trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also T. W. Elec. Service Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1985); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented through the prism of the substantive evidentiary burden"). When presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255 (*citing Adickes v. S.H. Dress & Co.*, 398 U.S. 144, 158-59 (1970)). Conclusory,

1   nonspecific statements in affidavits are not sufficient; and, the court will not presume "missing

2   facts". *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

3                                        FACTS

4          Many of the facts alleged by one party in this action are contested by the other side.

5   However, on some of critical facts, there is no dispute between the parties.  The parties agree that

6   on two occasions -- once on October 14, 2011, and once on April 2, 2012 --plaintiff was denied

7   his medication because he was not in the cell cluster when medications were passed out (ECF

8   No. 23, page 5). The parties agree that on October 14, 2011 plaintiff was outside his cluster in

9   the "foyer" on his way to visiting. The parties agree that nurse Jane Doe "Terry" gave

10  medication to inmate Gary Bentley, who was also in the foyer, but the nurse refused to give

11  medication to plaintiff (ECF No. 23, page 8, (grievance form)). Plaintiff alleges a denial of equal

12  protection, cruel and unusual punishment, and an ADA/RA discrimination claim based on this

13  set of facts (ECF No. 23, page 2).

14         Vincent Goldsmith explains in his first declaration that inmate Bentley was taking

15  medication deemed "critical." (ECF No. 41, Page 5). Thus, inmate Bentley was given his

16  medication even though he was not in the unit when medication was passed out. Plaintiff does

17  not refute these assertions of fact. The parties do not agree whether or not inmate Bentley had a

18  cup of water with him in the foyer, (ECF No. 48), but that fact is not material.

19         Vincent Goldsmith states that the medications plaintiff was taking "were not critical."

20  (ECF No. 41, page 5). While plaintiff attempts to refute this statement, he does not present any

21  evidence from a medical expert showing that the medication he was taking was critical and could

22  not be missed. Plaintiff complains that he has a heart condition and liver problems, but he does

23  not show that he was taking any medication for either condition. Further, Dr. Balderrama states:

24

1    The patient has claimed in the past to have a history of leaking valves and
     other heart conditions, but to date we have not documented any abnormalities and
2    his electrocardiograms were normal with no evidence of arrhythmias.

3    (ECF No. 40, page 3). Plaintiff presents two pieces of evidence in an attempt to contradict this

4    statement, the first is an echocardiogram conducted on August 8, 2007 (ECF No. 48, pages 33-34

5    of 109). The findings of this exam support Dr. Balderrama's statements, the impression of the

6    person reading the exam was "normal structure and function." (ECF No. 48, pages 33 of 109).

7    Plaintiff also presents a twenty-four hour heart monitoring study performed on December 5,

8    2007. The findings from this study were "Sinus rhythm with a rate of 54 to 145 bpm, Sinus

9    arrhythmia, and premature ventricular contractions, some in couplets (ECF No. 48, page 36 of

10   109). The person who interpreted the test results is Dr. Jamie Pugeda. Plaintiff presents nothing

11   from Dr. Pugeda telling the Court what the test results mean and the Court has nothing but

12   plaintiff's own diagnoses that the results of this test means he has heart disease. Plaintiff has

13   presented no evidence that he was taking any medication for a heart condition on either of the

14   two days he was denied medication.

15   Plaintiff does not refute Dr. Balderrama's affidavit stating that plaintiff's missing his

16   medication "would not adversely affect plaintiff's condition." (ECF No. 40, page 4). Plaintiff

17   fails to show that any named defendant or Dr. Balderrama were aware of the prior cardiac tests

18   or that these tests show plaintiff actually has a heart condition. Without expert testimony

19   interpreting the results of the prior test, the document is meaningless. Plaintiff's allegations as to

20   his medical conditions are supported only by his own statements and his own interpretation of

21   medical records, not by any medical expert testimony.

22   Mr. Goldsmith, in his declaration notes that plaintiff refused his medication twice earlier

23   in the day of October 14, 2011, and plaintiff refused his medications twice on October 15, 2011.

24

1  Plaintiff filed a response in which he claims to "vehemently refute" defendants statements, (ECF
2  No. 48, page 2), but his evidence does not support his assertions.

3      In a second declaration Vincent Goldsmith states that the policy regarding medication
4  passes, (the handing out of medication), is driven by a number of factors including safety,
5  security, and efficacy (ECF No. 42, page 3). Mr. Goldsmith states that the inmate information
6  booklet that is given to inmates outlines the inmate's responsibilities for obtaining medicine
7  (ECF No. 42, page 4). The booklet itself has been placed into evidence (ECF No. 41, Exhibit 1,
8  page 10). Nursing staff comes through the unit three times a day. To obtain medication, the
9  inmate "must be present in the housing unit and have a cup of water (ECF No. 41, Exhibit 1,
10 page 10). In response to defendants' declaration, plaintiff alleges that he had to buy a copy of the
11 booklet at 20 cents a page (ECF No. 48, page 20-21). Plaintiff does not deny he had access to the
12 material and knew of the policy. Plaintiff does not contest the assertion that if he missed a
13 medication he could simply take it at the next medication pass.

14     The parties do not agree whether plaintiff had the ability to properly exhaust the April
15 incident through the prison grievance system. Plaintiff alleges that he requested grievance forms
16 and jail staff refused to provide him with the form (ECF No. 32, page 19-22).

17                                    DISCUSSION

18     1.      Exhaustion of Administrative remedies.

19     The Prison Litigation Reform Act ("PLRA") requires plaintiff to exhaust whatever
20 administrative remedies are available to him prior to filing a complaint in federal court.  The
21 relevant portion of the act states:

22         No action shall be brought with respect to prison conditions under section 1983 of
           this title, or any other Federal law, by a prisoner confined in any jail, prison, or other
23         correctional  facility  until  such  administrative  remedies  as  are  available  are
           exhausted.
24

42 U.S.C. § 1997e(a).

Here, plaintiff filed this action while incarcerated and the Act applies to him. *See* 42 U.S.C. §1997e(h). The statute defines "prisoner" to include any person confined in a facility for a violation of criminal laws, including persons accused of, or convicted of, crimes.

The parties agree that plaintiff exhausted his allegation concerning the denial of medication on October 14, 2011 (ECF No. 28, page 13). Defendants argue that plaintiff did not file a grievance regarding the April 2, 2012 incident. Plaintiff maintains he could not get jail staff to give him a grievance form.

An exception to the normal exhaustion requirement exists if a prison official renders administrative remedies effectively unavailable. *Harvey v. Jordan*, 605 F.3d 681, 684-86 (9th Cir. 2010). The Court declines to recommend dismissal on the grounds of failure to exhaust administrative remedies because there are issues of fact regarding the availability of the grievance process. For purposes of the remainder of this Report and Recommendation, the Court will assume that plaintiff did exhaust his remedies.

2.      Plaintiff's 42 U.S.C. 1983 claim.

The due process clause of the Fourteenth Amendment protects pretrial detainees by prohibiting the state from punishing them. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). Courts apply the Eighth Amendment standard to determine if a violation of a pre trial detainee's Fourteenth Amendment right has occurred. *Simmons v. Navajo County Ariz.*, 609 F. 3d 1011, 1017 (9th Cir. 2010). To establish a violation of the Eighth Amendment, the offending conduct must reflect an unnecessary and wanton infliction of pain, *Whitley v. Albers*, 475 U.S. 312, 319 (1986), or the conduct must  deprive the inmate of the minimal civilized measure of life's necessities, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). A viable Eighth Amendment claim

has an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component in this case requires that the deprivation be serious, *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). The *Hudson* Court stated:

> The objective component of an Eighth Amendment claim is therefore contextual and responsive to "contemporary standards of decency." *Estelle, supra*, 429 U.S., at 103, 97 S.Ct., at 290. For instance, extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society," *Rhodes, supra*, 452 U.S., at 347, 101 S.Ct., at 2399, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson, supra*, 501 U.S., at 298, 111 S.Ct., at 2324 (*quoting Rhodes, supra*, 452 U.S., at 347, 101 S.Ct., at 2399) (*citation omitted*). A similar analysis applies to medical needs. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *See Estelle v. Gamble*, 429 U.S., at 103-104, 97 S.Ct., at 290-291.

*Hudson*, 503 U.S. at 8-9.

The subjective component requires that defendants act with deliberate indifference to an inmate's health or safety. *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).  The prison official will be liable only if the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference.  *Farmer v. Brennan*, 511 U.S. 837.

Plaintiff's claims fail to meet either the objective or subjective standard. Plaintiff does not show that depriving him of a dose of his medication from time to time causes an unacceptable risk of serious injury in his case. Nor has plaintiff demonstrated through admissible evidence that any of this medication was critical to plaintiff's care. Furthermore, plaintiff has not demonstrated that the defendants' actions or inactions were the result of deliberate indifference.

1    While plaintiff complains that he has liver problems and heart problems he presents no

2    evidence he was being treated for either of those conditions. Dr. Balderrama provides the only

3    relevant medical testimony regarding medication and treatment to the Court (ECF No. 40). Dr.

4    Balderrama states that plaintiff's missing a dose of his medication "would not adversely affect

5    plaintiff's condition," and "would not cause the patient any harm." (ECF No. 40, page 4).

6    Plaintiff fails to contradict this evidence.

7    Plaintiff's disagreement with the statements in Dr. Balderrama's declaration does not

8    provide any grounds to strike the document from the record, (ECF No. 48, page 2). The motion

9    to strike the declaration is denied.

10    Plaintiff complains of a heart condition and provides a copy of a twenty-four hour heart

11    monitoring test. He fails to show that any defendant was aware of this test or had drawn any

12    inference that plaintiff in fact had a serious medical condition. Thus, he fails to show any

13    defendant harbored an improper subjective motivation. The Court recommends granting

14    defendants' motion for summary judgment on plaintiff's Fourteenth Amendment cruel and

15    unusual punishment claim.

16    3.    Rehabilitation Act and Americans with a Disabilities Act claims.

17    The RA and ADA apply to prisons and jails. *United States v. Georgia*, 546 U.S. 151, 154

18    (2006); *Pierce v. County of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008). Both Acts prohibit

19    discrimination against disabled or handicapped persons.

20    A.    ADA claims.

21    "Pursuant to Title II of the ADA, a 'qualified individual with a disability' cannot, 'by

22    reason of such disability, be excluded from participation in or be denied the benefits of the

23    services, programs, or activities of a public entity, or be subjected to discrimination by any such

24

1 entity.'" *Pierce v. County of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008). Plaintiff does not

2 show that he has been discriminated against because of a disability or handicap as required by

3 the ADA. Plaintiff was refused medication because he was not in his unit when medication was

4 handed (ECF No. 23). This has nothing to do with any handicap or disability. Plaintiff's

5 medications were available to him on the next medication pass and there are three medication

6 passes a day (ECF No. 41, declaration of Goldsmith page 4).

7        Plaintiff also bring his ADA claim as a violation of the equal protection clause of the

8 Fourteenth Amendment. Plaintiff alleges discrimination because inmate Gary Bentley was given

9 his medication while in the foyer waiting for visitation, but plaintiff was not. Plaintiff alleges that

10 he and inmate Bentley were "similarly situated." (ECF No. 23, page 2).  The Ninth Circuit has

11 held that:

12        "The Equal Protection Clause does not forbid classifications*." Nordlinger*
    *v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). "It simply keeps
13     governmental decisionmakers from treating differently persons who are in all
    relevant respects alike." *Id.* (citation omitted); *see also Honolulu Weekly, Inc. v.*
14     *Harris*, 298 F.3d 1037, 1047 (9th Cir.2002) ("The Equal Protection Clause directs
    that 'all persons similarly circumstanced shall be treated alike.' " (quoting *Plyler*
15     *v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982))). "Evidence of
    different treatment of unlike groups does not support an equal protection claim."
16     *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir.2005) (citation
    omitted).
17
18 *Wright v. Incline Village General Improvement Dist.*, 665 F.3d 1128, 1140 (9th Cir. 2011).

19        Defendants have presented evidence that inmate Bentley was taking "critical"

20 medication, but plaintiff was not (ECF No. 41, page 5, Declaration of Vincent Goldsmith). Thus,

21 the inmates were not similarly situated. Plaintiff also fails to show that he was denied any service

22 because of his disability or handicap. Plaintiff was not in compliance with the policy and,

23 therefore, did not receive his medication at that time. The Court recommends granting

24 defendants' motion for summary judgment on plaintiff's ADA claims.

REPORT AND RECOMMENDATION - 9

1      B.      RA claims claims.

2      An action taken by prison officials is constitutional and does not violate the RA if the

3   action is reasonably related to a legitimate penological goal. *Pierce v. County of Orange*, 526

4   F.3d 1190, 1216-17 (9th Cir. 2008)(noting application of a four factor test to determine if an

5   action taken is reasonably related to a legitimate penological goal). The Court considers four

6   factors: (1) there must be a "valid, rational connection" between the prison regulation and the

7   legitimate governmental interest put forward to justify it; (2) whether there are alternative means

8   of exercising the right that remain open to prison inmates; (3) the impact accommodation of the

9   asserted constitutional right will have on guards and other inmates, and on the allocation of

10  prison resources generally; (4) the absence of ready alternatives is evidence of the

11  reasonableness of a prison regulation. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987).

12     The Jail has set forth its reasons for the policy requiring inmates to be in their cell cluster

13  and having the inmates show up with a glass of water. The policy is in place so that medication

14  may be given out safely, securely, and efficiently (ECF No. 42, page 3). There are certainly valid

15  rational connections between the policy and the reasons for the policy and they are outlined in

16  the declarations of Vincent Goldsmith (ECF No. 41 and 42). Further, the government objective is

17  legitimate and neutral. The first factor of the four prong test favors the defendants.

18     Options remain open to plaintiff. He may comply with the policy and take his medication

19  or leave the unit and take his medication at a later time. He has three opportunities each day to

20  comply with the policy and obtain medication. The second factor, therefore, favors defendants.

21     Defendants maintain that accommodating plaintiff would result in a number of problems

22  Vincent Goldsmith states:

23          If we were to give medications to inmates on their demand this would create
            havoc in the jail. Medication times would be compromised thereby placing

24

inmates at risk for overdosing and under-dosing to the point that medication would be lethal and/or ineffective. If dosing times were left to the inmates [sic] whim managing the distribution of medications would be futile. The County would have to hire an army of nurses and purchase computers to determine when an inmate should receive his next dose.

Additionally, by distributing medication in the units, custody can control and monitor the inmates so that the nurse is safe, medications are secured, the inmate's confidentiality is maintained and dosing times for efficacy is enforced. Our current med pass system accommodates all four of these facets for orderly jail administration while protecting the nurse's license, inmate's constitutional rights and the medical efficacy of the treatment. As the Health Service Administrator our system is similar to those of other jails in the community and across the nation for dispensing medications.

(ECF No. 41, pages 3-4). Plaintiff maintains that the policy should delineate specific times for medications being passed out (ECF No. 48, page 12). This may or may not be helpful to plaintiff. Plaintiff does not show that giving a specific time for medication pass would help him comply with the policy. If the time for medication and visitation conflicts, plaintiff would still have to choose between taking medication at that time or going to visitation. Further, his proposed remedy would take away flexibility from nursing staff who may have to give medications to a large number of inmates in one cluster, which could make them late in the next cluster. The third factor does not clearly favor either party.

Neither party has addressed the fourth factor of the test in briefing. The Court recommends finding that Pierce County Jail's medication policy is rationally related to legitimate penological goals. Defendants' policy does not violate any right owed plaintiff under the RA or ADA. The Court recommends granting defendants' motion for summary judgment.

4.      Injunctive relief.

On October 15, 2012, plaintiff informed the Court he had been moved and is no longer at the Pierce County Jail (ECF No. 38). There is no longer a live case or controversy regarding

1 injunctive relief because plaintiff cannot show a real and immediate threat of irreparable injury

2 and no adequate remedy at law.

3          In order to seek any form of injunctive relief plaintiff must show threat of irreparable

4 injury that is real and immediate, not conjectural or speculative. *O'Shea v. Littleton,* 414 U.S.

5 488, 494 (1974).  Plaintiff's transfer to the state prison system means that he is no longer subject

6 to the Pierce County Jail policy and he cannot show real and immediate threat of injury.  The

7 Court recommends that defendants' motion for summary judgment be granted and this action

8 dismissed with prejudice. In forma pauperis status should be revoked for the purpose of appeal.

9          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

10 fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

11 6. Failure to file objections will result in a waiver of those objections for purposes of de novo

12 review by the district judge. *See* 28 U.S.C. § 63(b)(1)(C). Accommodating the time limit

13 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

14 March 15, 2013, as noted in the caption.

15          Dated this 25th day of February, 2013.

16

17

18          J. Richard Creatura
            United States Magistrate Judge
19

20

21

22

23

24

REPORT AND RECOMMENDATION - 12